IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:12-cv-23324-KMM

THOMAS E. SHEA, individually, and on
behalf of all others similarly situated,

      Plaintiff,

vs.

BBVA COMPASS BANCSHARES, INC.,

      Defendant.

                                     /

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION

THIS CAUSE came before the Court upon Defendant's Motion to Compel Arbitration and Dismiss Action (ECF No. 13). Plaintiff filed a Response (ECF No. 21) and Defendant filed a Reply (ECF No. 22). The Motion is now ripe for review. UPON CONSIDERATION of the Motion, the Response, the Reply, the pertinent portions of the record, and being otherwise fully advised in the premises, this Court enters the following Order.

## I. BACKGROUND[1]

This is an action for a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). Plaintiff is an individual and a citizen of the State of Florida. Compl., ¶ 5. Defendant is an Alabama banking corporation with its principal place of business in Alabama. Compl., ¶ 6. Defendant conducts general banking services, such as receiving deposits, making loans, and furnishing checking accounts, at numerous locations throughout the United States. See Decl. of Houston, ¶¶ 3–5 (ECF No. 13-2). This Court has federal question jurisdiction, 28

---

[1] The facts herein are taken from Plaintiff's Complaint (ECF No. 1), Defendant's Motion to Compel, Plaintiff's Response, and Defendant's Reply.

U.S.C. § 1331, because the Complaint alleges a violation of the TCPA. See Mims v. Arrow Fin. Servs., LLC, __ U.S. __, 132 S. Ct. 740, 753, 181 L. Ed2 881 (2012).

The TCPA prohibits "any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." Duran v. Wells Fargo Bank, N.A., 878 F. Supp. 2d 1312, 1316 (S.D. Fla. 2012) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)). "This TCPA provision also applies to text messages." Buslepp v. Improv Miami, Inc., No. 12-CV-60171, 2012 WL 4932692, at *2 (S.D. Fla. Oct. 16, 2012) (citing Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952–53 (9th Cir. 2009)). "In order to establish a violation of the TCPA, a plaintiff must demonstrate that a defendant called or texted a number assigned to a cellular telephone service using an automatic dialing system." Id. (citing Breslow v. Wells Fargo Bank, N.A., 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012)). The TCPA, however, "exempts those calls 'made with the prior express consent of the called party.'" Buslepp v. B&B Entertainment, LLC, No. 12-CV-60089, 2012 WL 4761509, at *5 (S.D. Fla. Oct. 5, 2012) (quoting 47 U.S.C. § 227(b)(1)(A)). "'Express consent is [c]onsent that is clearly and unmistakably stated.'" Id. (quoting Satterfield, 569 F.3d at 955). The defendant has the burden of establishing this affirmative defense. See Breslow, 2012 WL 1448444, at *3.

Plaintiff alleges that on August 24, 2012, Defendant sent Plaintiff a text message to his cellular phone. Compl., ¶ 20. The text message stated: "New Updated BBVA Compass Android app with Bill Pay. http://bbvacompass.com/mobile/android2/?b=1 Msg&Data Rates May Apply. Text HELP for help, STOP to cancel." Compl., ¶ 21. Plaintiff alleges that identical text messages were sent to other individuals by Defendant's use of an automatic telephone dialing

system. Compl., ¶ 22. Accordingly, Plaintiff alleges that Defendant violated Section 227(b)(1)(A)(iii) of the TCPA by sending unsolicited commercial text messages to Plaintiff's wireless cellular device without his prior consent and through use of an automatic dialing system. Compl., ¶¶ 35–40. Plaintiff additionally seeks to bring this claim on behalf of all other individuals to whom Defendant sent a text message, actual and statutory damages, an injunction barring Defendant from engaging in similar conduct, and an award of attorney's fees and costs. Compl., at 9.[2]

Defendant filed the instant Motion to Compel pursuant to Sections 2, 3, and 4 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), seeking an order compelling arbitration of the TCPA claim. Defendant alleges that on October 12, 2007, Plaintiff opened a personal deposit account with Defendant. In doing so, Plaintiff agreed to be bound by the Consumer Deposit Account Agreement (the "Deposit Agreement"). See Deposit Agreement, Decl. of Houston, Ex. 2.[3] The Deposit Agreement was subsequently amended multiple times, the last of which became effective on June 2011, prior to Plaintiff's termination of his deposit account. See Decl. of Houston, Ex. 3. Additionally on October 12, 2007, Plaintiff registered to use online banking services offered by Defendant. In order to have access to such services, Plaintiff agreed to the terms and conditions contained in Defendant's Agreement and Disclosure Statement for Online Banking (the "Online Banking Agreement"). See Online Banking

---

[2] The TCPA allows a party to sue to recover its "actual monetary loss" or "to receive $500 in damages" per violation. 47 U.S.C. § 227(b)(3)(B). A party may also sue to enjoin violations of the statute. 47 U.S.C. § 227(b)(3)(A), (C). If a plaintiff establishes that the violations were willful or knowing, the plaintiff is entitled to treble damages. 47 U.S.C. § 227(b)(3).

[3] "Motions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." Bell v. Atlantic Trucking Co., No. 09-CV-406J32MCR, 2009 WL 4730564, at *2 (M.D. Fla. Dec. 7, 2009). "Courts have deemed a motion seeking to compel arbitration as a factual attack as it asserts that a provision of an extrinsic document, an arbitration clause contained within the body of a contract, deprives the court of its power to adjudicate the plaintiff's claims." Id. at *3.

Agreement, Decl. of Houston, Ex. 6. Subsequently on September 22, 2011, Plaintiff registered

to use Defendant's online banking services on his cellular phone through the use of a mobile

banking application. In order to do so, Plaintiff agreed to the terms and conditions contained in

Defendant's Mobile Banking Addendum to Agreement and Disclosure Statement for Online

Banking. See Addendum, Decl. of Houston, Ex. 7.

      The Deposit Agreement and Online Banking Agreement (collectively, the "Agreements")

each contain an arbitration provision (the "Arbitration Provision") which states, in relevant part,

> By opening or maintaining the account, you agree that if a dispute, claim or
> controversy of any kind arises out of or relates to this Agreement or to your
> account or any transaction involving your account, either you or we can choose
> to have that dispute resolved by binding arbitration. This arbitration provision
> limits your ability to litigate claims in court and your right to a jury trial. You
> should review this section carefully. You will not have the right to participate
> as a class representative or member of any class of claimants for any claim
> subject to arbitration . . . .
>
> . . . . At the option of the first to commence arbitration, you or we may choose
> to have the arbitration conducted by JAMS ADR ("JAMS") or the American
> Arbitration Association ("AAA"), or you and we may agree upon a different
> arbitrator. In any event, any arbitration under this Agreement shall be
> conducted in writing in accordance with the applicable arbitration rules of the
> arbitrator or arbitration organization ("Rules"). If an arbitrator other than the
> AAA is chosen, the Rules of the AAA will be applied to any circumstances
> that is not addressed by the Rules of the chosen arbitrator. In the event of any
> inconsistency between this Agreement and the rules to be used for arbitration,
> such inconsistency shall be resolved in favor of this Agreement. This
> arbitration provision is made pursuant to a transaction involving interstate
> commerce, and the Federal Arbitration Act (the "FAA") shall apply to the
> construction, interpretation, and enforceability of this Agreement
> notwithstanding any other choice of law provision contained in this
> Agreement.
>
>           ***
>
> . . . . This arbitration provision shall survive termination of this Agreement
> and the closing of your Account.

Deposit Agreement, at 16–18 (emphasis omitted).[4]

Defendant now seeks to compel arbitration of this dispute under the Arbitration Provision pursuant to Sections 2, 3, and 4 of the FAA. Defendant argues that the Complaint, which asserts a single count for a violation of Section 227(b)(1)(A)(iii) of the TCPA, is a dispute between the Parties concerning their business relationship covered by the Arbitration Provision.

## II. ANALYSIS

"Under the Federal Arbitration Act [], a written agreement to arbitrate in 'a contract evidencing a transaction involving commerce' is "valid, irrevocable, and enforceable.'" Obremski v. Springleaf Fin. Servs., Inc., No. 12-CV-1594T33AEP, 2012 WL 3264521, at *1 (M.D. Fla. Aug. 10, 2012) (quoting 9 U.S.C. § 2); see also Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005). "'[U]pon being satisfied that the issue involved . . . is referable to arbitration under such an agreement, [the Court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.'" Obremski, 2012 WL 3264521, at *1 (quoting 9 U.S.C. § 3).

Section 4 of the FAA provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. Thus, a district court must compel arbitration and stay the underlying action if the parties had an earlier agreement to arbitrate their dispute. 9 U.S.C. § 3; see Goodman Ltd. P'ship v. THF Constr., Inc., 321 F.3d 1094, 1095 (11th Cir. 2003) ("[A] district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute."). "Still, '[w]hile there is a

---

[4] The Online Banking Agreement also contains an arbitration provision that is substantially similar to the one contained in the Deposit Agreement. See Online Banking Agreement, at 33–35. Additionally, each previous version of the Agreements also contained a similar arbitration provision. See Pendergast v. Sprint Nextel Corp., 691 F.3d 1224, 1235 n.11 (11th Cir. 2012) (finding that a changes-to-agreement clause in a wireless telephone agreement is enforceable).

liberal federal policy favoring arbitration agreements, the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate.'" Mims v. Global Credit & Collection Corp., 803 F. Supp. 2d 1349, 1353 (S.D. Fla. 2011) (quoting Becker v. Davis, 491 F.3d 1292, 1298 (11th Cir. 2007)).[5]

"In reviewing a motion to compel arbitration, a district court must consider three factors: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived." Integrated Security Servs. v. Skidata, Inc., 609 F. Supp. 2d 1323, 1324 (S.D. Fla. 2009) (citing Sims v. Clarendon Nat'l Ins. Co., 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004).[6]

Plaintiff only presents two arguments in opposition to Defendant's Motion to Compel.[7] Plaintiff claims that (1) Plaintiff terminated his account so the Agreements cannot bind him to arbitrate his claim; and (2) Plaintiff's TCPA claim is not covered by the Arbitration Provision. As discussed below, both claims are without merit.

---

[5] "In other words, arbitration of a dispute should only be ordered where the court is satisfied that neither the formation of the parties' arbitration agreement nor its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, the court must resolve the disagreement." Solymar Inv., Ltd. v. Banco Santander S.A., 672 F.3d 981, 990 (11th Cir. 2012) (citing Granite Rock Co. v. Int'l Brotherhood of Teamsters, __ U.S. __, 130 S.Ct. 2847, 2855, 177 L.Ed.2d 567 (2010)).

[6] The third factor regarding whether the right to arbitrate was waived is not at issue between the Parties and is not further discussed.

[7] Plaintiff's failure to oppose numerous arguments contained in Defendant's Motion to Compel results in a waiver of those claims. For example, Plaintiff does not challenge the formation of the Agreements or the Arbitration Provision, the Agreements involve a transaction involving interstate commerce, the Arbitration Provision is governed by the FAA, the Arbitration Provision incorporates the rules of the FAA and JAMS, and the incorporation of such rules delegates gateway determination to an arbitrator. Additionally, Plaintiff apparently concedes that he waived the right to bring class claims under the Agreements. See Def. Mot. to Compel, at 18–20; see also Pendergast, 691 F.3d at 1234–36 (upholding a class action waiver and arbitration clause contained in the parties' agreement). Accordingly, Plaintiff's class action allegations in the Complaint will be stricken and this Court will compel Plaintiff's claims to arbitration on an individualized basis. Compl., ¶¶ 25–34.

First, Plaintiff alleges that he terminated his account and the Agreements prior to Defendant's conduct that violated the TCPA. See Pl. Resp., 8–10. Accordingly, Plaintiff claims that the Agreements expired and cannot form the basis of an agreement to arbitrate. Pl. Resp., at 8. This Court, however, finds that an arbitrator should address Plaintiff's challenge to the underlying Agreements because Plaintiff is not challenging the Arbitration Provision. Any "'challenge to the validity of a contract as a whole, and not specifically to the arbitration clause, must go the arbitrator.'" Integrated Security Servs., 609 F. Supp. 2d at 1325 (quoting Buckeye Check Cashing v. Cardegna, 546 U.S. 440, 449, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)). Indeed, "'unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance' because 'as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.'" Id. (citing Cardegna, 546 U.S. at 440, 126 S. Ct. at 1206). Thus, the validity of the Agreements after Plaintiff closed his account with the Defendant is a decision for the arbitrator. See Rent-A-Center, West, Inc. v. Jackson, 130 S. Ct. 2772, 2779 (2010) (holding that unless there was a challenge to the delegation provision specifically, the Court must enforce that provision, leaving any challenge to the validity of the agreement for the arbitrator).[8]

Second, Plaintiff argues that the TCPA claim is outside of the scope of the Arbitration Provision. See Pl. Resp., at 3–8. Again, this Court finds that Plaintiff's claim concerning the

---

[8] To the extent that Plaintiff is arguing that there is no written agreement to arbitrate, then this decision is for a court to decide on a motion to compel. See Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir. 2008). As discussed *infra*, this argument is without merit because the arbitration provision survived the termination of the Agreements. Moreover, as discussed *infra*, the incorporation of the rules of the AAA and JAMS into the delegation provision further demonstrates that this decision is for the arbitrator. See Terminix Int'l Co. LP, 432 F.3d at 1332 ("By incorporating the AAA Rules, including Rule 8, into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid.").

arbitrability of the TCPA claim should be addressed by an arbitrator instead of this Court. "Generally, arbitrability is a question for the trial court—and not the arbitrator—unless the parties 'clearly and unmistakably' provide otherwise." Bhim v. Rent-A-Center, Inc., 655 F. Supp. 2d 1307, 1310 (S.D. Fla. 2009) (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)); see also Rent-A-Center, 130 S. Ct. at 2777 (stating that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy"). However, when parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator. Terminix Int'l Co. LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1332 (11th Cir. 2005) (citations omitted) (holding that the incorporation of the AAA rules into an arbitration provision serves as clear and unmistakable evidence that the parties agreed an arbitrator would decide gateway determinations).

Here, this Court finds clear and unmistakable evidence of the Parties' intent to delegate the issue of arbitrability of the claims to the arbitration panel. See 24 Go Wireless, Inc. v. AT&T Mobility II, LLC, No. 11-CV-20930, 2011 WL 2607099, at *2 (S.D. Fla. 2011) (stating that "the parties clearly and unmistakably agreed to submit that issue to arbitration as well by expressly incorporating the rules of the American Arbitration Association ("AAA") into the arbitration provision of their Agreement"); see also Senior Servs. of Palm Beach LLC v. ABCSP Inc., No. 12-CV-80226, at *2–3 (S.D. Fla. June 7, 2012). The Parties explicitly incorporated the rules of the AAA and JAMS into the Arbitration Provision. See e.g., Deposit Agreement, at 16. Both of these rules delegate the issue of the arbitrability of a dispute to the arbitrator. For example, the AAA Rules provide that "[t]he arbitrator shall have the power to rule on his or her own

8

jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA, Commercial Arbitration Rules, Rule 7(a).[9]   Accordingly, any argument that the Plaintiff's TCPA claim is not arbitrable and outside of the scope of the Arbitration Provision must be presented to the arbitrator.  See GHM (South Beach) LLC V. Setai Owners LLC, No. 12-CV-21932-KMM (S.D. Fla. Sept. 20, 2012) (holding that the arbitration panel should decide arbitrability because the parties agreed to apply the rules of the International Chamber of Commerce); Mercury Telco Grp., Inc. v. Empresa De Telecommunicaciones De Bogota, 670 F. Supp. 2d 1350 (S.D. Fla. 2009) (holding that the arbitration panel should decide arbitrability because the parties agreed to apply the rules of the Arbitration and Conciliation Center of the Bogota Chamber of Commerce).  Accordingly, this Court finds that Defendant's Motion to Compel should be granted and an arbitrator should decide these gateway determinations according to the Parties' Arbitration Provision.

Even if this matter were properly before this Court, the undersigned would still find that Defendant's Motion to Compel should be granted.[10]  First, despite Plaintiff's claim that he terminated the Agreements, the Arbitration Provision is still valid and enforceable against Plaintiff's TCPA claim.  See Auchter v. Zagloul, 949 So. 2d 1189, 1194 (Fla. Dist. Ct. App.

---

[9] Likewise, the JAMS rules provide that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.  The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."   JAMS, Comprehensive Arbitration Rules & Procedures, Rule 11(c).

[10] "Generally, when deciding whether the parties in a case have agreed to arbitrate certain questions, including the validity and enforceability of their arbitration clause, courts 'should apply ordinary state-law principles that govern the formation of contracts.'"  Senior Servs. of Palm Beach LLC, No. 12-CV-80226, 2012 WL 2054971, at *2 (S.D. Fla. June 7, 2012) (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).  "This is because arbitration itself 'is a matter of contract.'"  Id. (citing Rent-A-Center, 130 S. Ct. at 2772).

2007) ("Arbitration provisions are to be construed to require arbitration of disputes arising after the cancellation of the underlying contract unless such disputes are specifically excluded from arbitration."). Indeed, the Arbitration Provision expressly provides that it survives the termination of the Agreements and the closing of an account with Defendant. See e.g., Deposit Agreement, at 18. ("This arbitration provision shall survive termination of this Agreement and the closing of your Account."). Thus, the Parties have a valid agreement in writing to arbitrate any disputes arising from the Agreements and Plaintiff's account. See Lambert, 544 F.3d at 1195 ("Accordingly, the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." (quoting 9 U.S.C. §§ 2–4)).[11] Second, Plaintiff's dispute clearly arises from the Parties' contractual relationship as embodied by the Agreements and relates to Plaintiff's account with Defendant. The Eleventh Circuit has typically "focused on foreseeability as proper standard for resolving the scope of an arbitration clause that covers disputes 'arising out of or pursuant to' the contract between the parties." Hemispherix Biopharma, Inc. v. Johannesburg Consol. Inv., 553 F.3d 1351, 1367 (11th Cir. 2008) (citing Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109, 1116 (11th Cir. 2001)); see also Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204, 1218–1221 (11th Cir. 2011)).

---

[11] Despite Plaintiff's claims, Litton Fin. Printing Div. v. NLRB, 501 U.S. 190 (1991), does not support his claim that the Agreements cannot be used to compel arbitration of his TCPA claim. See Pl. Resp., at 8–10. The Parties explicitly agreed that the Arbitration Provision would remain effective despite the termination of Plaintiff's account and the Agreements. Contra Klay v. All Defendants, 389 F.3d 1191, 1203 (11th Cir. 2004) ("Because arbitration is strictly a matter of contract, we cannot compel arbitration for disputes which arose during time periods in which no effective contract requiring arbitration was governing the parties." (citing Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc., 312 F.3d 1349, 1358 (11th Cir. 2002))); see also In re Bailey, No. 09-AD-4002LWD, 2009 WL 8592798, at *3–4 (Bankr. S.D. Ga. Oct. 8, 2009) (citation omitted).

Accordingly, this Court finds that the TCPA claim falls squarely under the broad language of the Arbitration Provision. See Schatt v. Aventura Limousine & Transportation Serv., Inc., No. 10-CV-22353, 2010 WL 4942654, at *4 (S.D. Fla. Nov. 30, 2010) (stating that "the phrase 'arising out of or relating to' the contract has been interpreted broadly as to encompass virtually all disputes between contracting parties." (quoting Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999))); see also Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1221–22 (11th Cir. 2002) (rejecting argument that arbitration provision was too broad and holding that agreement to arbitrate "all claims between the parties" applied not just to claims arising out of the parties' contract). The Arbitration Provision committed both parties to arbitrate a "dispute, claim or controversy of any kind aris[ing] out of or relat[ing] to this Agreement or to your account or any transaction involving your account . . . ." Deposit Agreement, at 16. Thus, Plaintiff's claim under the TCPA that he was illegally sent a text message to his cellular phone clearly involves his account with the Defendant and the Parties' relationship as defined by the Agreements. This is especially true since Defendant alleges that it had prior consent to send a text message to Plaintiff concerning the update to its banking application since Plaintiff previously signed up for online banking services on his cellular phone through use of its banking application. Def. Reply, at 4–5. Accordingly, Plaintiff's TCPA claim is subject to the Arbitration Provision and is a clearly foreseeable result of the performance of the Parties' actions pursuant to the Agreements and related to Plaintiff's account with Defendant. See Integrated Security Servs., 609 F. Supp. 2d at 1325.[12] Thus, even if this Court were to address the merits of Defendant's Motion to

---

[12] "Courts, moreover, favor arbitration, . . . and resolve any doubts about the scope of arbitrable issue in favor of arbitration." Campbell's Foliage, Inc. v. Federal Crop Ins., No. 11-CV-21666-AJJ, at 2 (S.D. Fla. Aug. 4, 2011) (citing Hall Street Assocs. v. Mattel, Inc., 552 U.S. 576, 581 (2008); World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc., 517 F.3d 1240, 1245 (11th Cir. 2008)).

Compel, this Court finds that it should be granted because Defendant has demonstrated that there is a valid written agreement to arbitrate and that an arbitrable issue exists.

## III. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant's Motion to Compel Arbitration and Dismiss Action (ECF No. 13) is GRANTED IN PART.[13] This matter is hereby STAYED. The Parties are instructed to file a notice with this Court within fourteen (14) days of a final decision by the arbitration panel. The Clerk of the Court is instructed to administratively CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this ⁷⁄⁴ day of March, 2013.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:     All counsel of record

---

[13] This Court declines Defendant's request to dismiss the Complaint, see Def. Mot. to Compel, at 20–21, and finds that a stay of the proceedings is appropriate and will not impede judicial economy. See 9 U.S.C. § 3.